01

02

03

04

05

06                    UNITED STATES DISTRICT COURT
                      WESTERN DISTRICT OF WASHINGTON
07                              AT SEATTLE

08  KENNETH R. ALSTON,                    )
                                          )
09              Petitioner,               )   CASE NO. C11-0250-TSZ
                                          )
10      v.                                )
                                          )   REPORT AND RECOMMENDATION
11  JEFFERY A. UTTECHT,                   )
                                          )
12              Respondent.               )
    _____)
13

14              INTRODUCTION AND SUMMARY CONCLUSION

15          Petitioner Kenneth Alston has submitted to this Court for review a petition for writ of

16  habeas corpus under 28 U.S.C. § 2254.  Petitioner, by way of the instant petition, seeks relief

17  from a 2008 King County Superior Court judgment and sentence.  Respondent has filed an

18  answer to the petition together with relevant portions of the state court record, and petitioner

19  has filed a response to respondent's answer.  This Court, having carefully reviewed the

20  petition, the briefing of the parties, and the balance of the record, concludes that petitioner's

21  federal habeas petition should be denied and this action should be dismissed with prejudice.

22  / / /

    REPORT AND RECOMMENDATION
    PAGE -1

## FACTUAL/PROCEDURAL BACKGROUND

02   The Washington Court of Appeals summarized the facts relevant to petitioner's

03   conviction as follows:

04   The charge stemmed from an incident in which Alston fired a pistol at
Easker Buckley.

05

06   Alston frequently visited Heather Keating in an apartment complex in
Auburn, where she lived with her two children. Two of her neighbors, Easker

07   and Jeanette Buckley, have four children who often played with Keating's
children. Sometime in the summer of 2007, Alston saw the Buckley children

08   near his car and noticed it was scratched. Easker believed that Alston "went
off" on his children and "cursed them out". According to Alston, he told the
children nicely that they should not play near other people's property because

09   they might damage it. Alston eventually admitted cursing but said he was
talking to himself.

10

11   Easker later confronted Alston at Keating's house. According to
Alston, Easker acted irate, cursed at him, and told Alston he would kick his teeth

12   in and beat him if he ever talked to Easker's children that way again. Alston
knew Easker was acquainted with a man identified as "Vick" or "Victor," who
had dated Keating and previously threatened Alston. Alston believed that Vick

13   had put a bullet hole in his house and was terrified of him. Because of the
circumstances and Easker's presumed connection with Vick, Alston testified

14   that he felt trapped and was terrified. According to Easker, he and Alston were
talking trash, using curse words, and making mutual threats. Easker testified

15   that near the end of the argument, Alston said that "one of us is going to die, it
has to be me or you."

16

17   About four to six weeks after this confrontation, on September 30, 2007,
Alston was at Keating's apartment helping her move. Alston and Easker

18   encountered each other outside the apartment. Alston believed Easker was
staring at him aggressively and Easker believed Alston was looking at him in a
funny way. The two exchanged words. According to Alston, Easker then

19   came toward him and Alston felt trapped. Alston pulled a gun but Easker did
not stop. Alston fired eight shots in Easker's direction but testified that he was

20   just trying to scare Easker away and not to hit him. Although Easker fled after
the first shot, Alston testified that he was freaked out and kept pulling the trigger

21   until the gun was empty. Alston retrieved a second clip of ammunition from his
car and reloaded but then left in his car.

22

Easker's version of the event was slightly different. Easker testified that he and Alston got into an argument and he believed Alston was goading him into a fight. When Easker stepped toward Alston, Alston pulled up his shirt to show Easker he had a gun. Easker stopped. Alston then stepped forward, pointed the gun at Easker and cocked it. Easker asked Alston if he was going to shoot him. Easker saw a neighbor, Michelle Dawson, and yelled at her to call the police. Easker ran and Alston repeatedly fired at him. Dawson testified that Alston pulled the gun and fired a shot at Easker, fired several more shots as Easker was fleeing, and then drove away.

The incident happened on a Sunday evening. The police identified Alston as a suspect and went to his workplace all the next week but Alston did not appear. The police arrested Alston at work on October 8, 2007. They later recovered two guns from his home, one which was identified as the weapon used in the shooting. Both guns were registered to Alston and he possessed a concealed weapons permit at the time of the incident.

The State charged Alston with first degree assault with a firearm. The only issue at trial was whether Alston was acting in self-defense. During its case in chief, the prosecutor went over the sequence of the police investigation with Detective Weller of the Auburn Police Department. Detective Weller testified that the police could not locate Alston during the week after the incident. She also testified that Alston did not call 911 to report the incident and did not contact the Auburn Police Department between September 30 and his arrest on October 8. No objection was made to the prosecutor's questions.

Alston testified. He related his experience with Vick in 2005 when Vick threatened his life. Alston called 911 and reported the threat to the Tacoma police but testified that nothing happened as a result. In March or April of 2006, Alston found a bullet hole in his house and believed Vick was responsible. Alston reported the incident to the Tacoma police but did not tell them he suspected Vick because he was terrified of what Vick might do. Alston knew that Easker and Vick had collaborated on a music project and when Easker confronted him, Alston felt vulnerable, weak, and scared. During the second incident, Easker told Alston to go back into Keating's apartment but Alston felt he could not. Alston testified that Easker charged at him and he freaked out, drawing his pistol and firing until it was empty. Alston testified that it happened very fast and that he did not remember all the details. Defense counsel asked why Alston did not report the incident after it happened and he said he did not do so because the police did not do anything about the other two incidents he did report. During cross-examination, the prosecutor asked if Alston drove to a well lit area and called police. Alston replied he did not.

The prosecutor asked if he got up the next morning and realized things had gone too far and called the police. Alston replied that he did not. There was no objection to these questions.

During direct examination by the prosecutor, Easker and Jeannette both testified to what they believed Alston said to their children after he discovered the scratch on his car. There was no objection. During cross-examination, Alston's counsel questioned Easker about apparent discrepancies between Easker's written statement and his testimony at trial. Counsel's questioning elicited Easker's testimony that Easker and his wife believed Alston was "weird," "crazy," and the type of person who might show up with a gun. Defense counsel also elicited testimony showing that Easker was afraid of Alston.

(Dkt. No. 14, Ex. 6 at 1-5 (footnotes omitted).)

On April 15, 2008, petitioner was found guilty, following a jury trial, on the charge of assault in the first degree while armed with a firearm. (*Id*., Ex. 1 at 1-2.) On May 2, 2008, petitioner was sentenced to a total term of 153 months confinement. (*Id*., Ex. 1 at 4.) Petitioner thereafter appealed his conviction to the Washington Court of Appeals. (*See id*., Exs. 2, 3, 4 and 5.) On November 9, 2009, the Court of Appeals filed an unpublished opinion affirming petitioner's conviction. (*Id*., Ex. 6.)

Petitioner next sought review of the Court of Appeals' decision in the Washington Supreme Court. (*See id*., Ex. 7.) Petitioner presented two issues to the Supreme Court for review:

1.     Constitutional right to silence violated and used as substantive evidence of guilt by the State. U.S. Const. Amend. VI.

2.     Ineffective assistance of counsel.

(*Id*., Ex. 7 at 2.)

On April 27, 2010, the Supreme Court denied review without comment and on May 19,

REPORT AND RECOMMENDATION
PAGE -4

01  2010, the Washington Court of Appeals issued its mandate terminating direct review.  (*Id.*,

02  Exs. 8 and 9.)   Petitioner now seeks federal habeas review of his conviction.

03  <u>GROUND FOR RELIEF</u>

04       Petitioner presents two grounds for relief in his federal habeas petition:

05  GROUND ONE:   Comment on Right to Silence

06       Supporting facts:   The State violated my constitutional right to silence by
07       implying my pre-arrest decision not to call 911 was substantive evidence of
         guilt.

08  GROUND TWO:   Ineffective Assistance of Counsel/Prejudicial Testimony

09       Supporting facts:   My trial counsel provided ineffective assistance of counsel
10       by both eliciting and failing to object to irrelevant and unfairly prejudicial
         evidence and hearsay evidence that undermined the defense theory of the case.

11  (Dkt. No. 7 at 5 and 7.)

12  <u>DISCUSSION</u>

13       Respondent concedes in his answer to the petition that petitioner has exhausted his two

14  grounds for federal habeas relief.   Respondent argues, however, that petitioner is not entitled to

15  relief because the state courts reasonably denied his claims.

16  <u>Standard of Review</u>

17       Under the Anti-Terrorism and Effective Death Penalty Act, a habeas corpus petition

18  may be granted with respect to any claim adjudicated on the merits in state court only if the state

19  court's decision was *contrary to*, or involved an *unreasonable application* of, clearly

20  established federal law, as determined by the Supreme Court, or if the decision was based on an

21  unreasonable determination of the facts in light of the evidence presented.   28 U.S.C.

22  § 2254(d) (emphasis added).

01     Under the "contrary to" clause, a federal habeas court may grant the writ only if the state

02 court arrives at a conclusion opposite to that reached by the Supreme Court on a question of

03 law, or if the state court decides a case differently than the Supreme Court has on a set of

04 materially indistinguishable facts.  *See Williams v. Taylor*, 529 U.S. 362 (2000).   Under the

05 "unreasonable application" clause, a federal habeas court may grant the writ only if the state

06 court identifies the correct governing legal principle from the Supreme Court's decisions but

07 unreasonably applies that principle to the facts of the prisoner's case.  *Id*.   The Supreme Court

08 has made clear that a state court's decision may be overturned only if the application is

09 "objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 69 (2003).

10     In addition, if a habeas petitioner challenges the determination of a factual issue by a

11 state court, such determination shall be presumed correct, and the applicant has the burden of

12 rebutting the presumption of correctness by clear and convincing evidence.   28 U.S.C. §

13 2254(e)(1).

14                    Ground One: Violation of Right to Silence

15     Petitioner asserts in his first ground for relief that the prosecution violated his

16 constitutional right to silence.   When a prosecutor's conduct is placed in question, the standard

17 of review is the "narrow one of due process, and not the broad exercise of supervisory power."

18 *Donnelly v. DeChristoforo*, 416 U.S. 637, 642 (1974).   It "is not enough that the prosecutors'

19 remarks were undesirable or even universally condemned."   *Darden v. Wainwright*, 477 U.S.

20 168, 181 (1986).   The relevant question is whether the prosecutors' comments "so infected the

21 trial with unfairness as to make the resulting conviction a denial of due process." *Darden*, 477

22 U.S. at 181 (quoting *Donnelly*, 416 U.S. at 643).   In order to assess a claim that a prosecutor's

01 comments constitute a due process violation, it is necessary to examine the entire proceedings

02 and place the prosecutor's statements in context. *See Greer v. Miller*, 483 U.S. 756, 765-66

03 (1987).

04      "The Fifth Amendment guarantees an accused the right to remain silent during his

05 criminal trial and prevents the prosecution [from] commenting on the silence of a defendant

06 who asserts the right."[1] *Jenkins v. Anderson*, 447 U.S. 231, 235 (1980) (citing *Griffin v.*

07 *California*, 380 U.S. 609, 614 (1965)). However, when a defendant elects to testify in his own

08 defense, the Fifth Amendment is not violated by the use of pre-arrest silence to impeach the

09 defendant's credibility. *Jenkins*, 447 U.S. at 238.

10      Petitioner asserts that the prosecution violated his right to silence when it elicited

11 testimony from both the investigating detective and from petitioner regarding petitioner's

12 decision not to call 911 after the shooting. Petitioner contends that the testimony at issue was

13 substantive evidence used to imply petitioner's guilt, not constitutionally permissible

14 impeachment evidence. The Washington Court of Appeals rejected petitioner's claim that the

15 prosecution violated his right to silence. The Court of Appeals explained its decision as

16 follows:

17           There is no constitutional violation if defendant testifies at trial and is
        impeached for remaining silent before arrest.[2] But even when a defendant

18         testifies at trial, the use of prearrest silence is limited to impeachment and may

19

20      1 The Fifth Amendment applies to the states through the Fourteenth Amendment. *See*
*Malloy v. Hogan*, 378 U.S. 1 (1964).

21

22      2 [Court of Appeals footnote 5] <u>State v. Burke</u>, 163 Wn.2d 204, 217, 181 P.3d 1
(2008) (citing <u>Jenkins v. Anderson</u>, 447 U.S. 231, 240, 100 S. Ct. 2124, 65 L. Ed. 2d 86 (1980)).

not be used as substantive evidence of guilt.[3]  "Impeachment is evidence, usually prior inconsistent statements, offered solely to show the witness is not truthful.  Such evidence may not be used to argue that the witness is guilty or even that the facts contained in the prior statement are substantively true."[4]

The evidence concerning Alston's failure to report the event came in at different points in the trial.  The Auburn detective who investigated the case testified to the course of the investigation and said that there was no 911 call or report from Alston.   In his own direct testimony, Alston testified that he did not call 911 because he did not believe the police would do anything.   On cross-examination, after Alston testified that he was terrified, freaked out, and did not remember everything that happened, the prosecutor asked if he called 911 after he got to a safer place or the next morning.   There was no objection at any point and Alston's failure to call the police was not mentioned in opening or closing argument.

* * * *

The prosecutor's questioning of Detective Weller showed the jury how the investigation progressed, how the evidence linking Alston to the offense was obtained and why Alston was not arrested until more than a week after the event.  Even though Alston's failure to report the event casts doubt on the credibility of his self-defense theory, there is nothing in the prosecutor's questioning of Detective Weller that suggests the prosecutor was using Alston's failure to call 911 as substantive evidence of his guilt.

Defense counsel asked Alston why he did not call 911.  This was a legitimate question that tied together Alston's alleged fear of Vick and his prior experiences with the police, his transferred fear of Easker, and his perception of the last confrontation with Easker.   The fact that Alston freaked out and why he did so appeared to be necessary to explain why he fired eight shots even though all the evidence showed that Easker fled after the first shot.   The prosecutor's questions on cross-examination explored the credibility of Alston's "freaked out" and "terrified" testimony.   There is nothing in this questioning that suggests the prosecutor was trying to use Alston's failure to call 911 as anything other than legitimate impeachment.  In State v. Lewis,[5] the court recognized

_____

3  [Court of Appeals footnote 6]   Id.

4  [Court of Appeals footnote 7]   Id. at 219 (citing State v. Thorne, 43 Wn.2d 47, 53, 260 P.2d 331 (1953)).

5  [Court of Appeals footnote 11]   130 Wn.2d 700, 706 n.2, 927 P.2d 235 (1996).

01     that prior silence may have relevance if it is inconsistent with a later defense.

02         Finally, the prosecutor did not make any argument that Alston's failure
to call 911 or report the shooting was evidence that he was guilty. Under the
03     circumstances, Alston has not shown that the evidence of his prearrest silence
was improperly used as substantive evidence of his guilt. There was no error.
04

05 (Dkt. No. 14, Ex. 6 at 5-7.)

06     The Court of Appeals reasonably concluded that nothing in the prosecutor's questioning

07 of either Detective Weller or petitioner suggested that the prosecutor was attempting to use

08 petitioner's failure to call 911 as substantive evidence of his guilt. Moreover, even if petitioner

09 could establish that one or more of the prosecutor's references to his failure to call 911 was

10 improper, a review of the trial transcript makes clear that none of those references, either

11 individually or cumulatively, resulted in any actual or substantial prejudice. Petitioner

12 therefore fails to establish that he is entitled to federal habeas relief with respect to his claim that

13 the prosecution violated his right to silence. *See Brecht v. Abrahamson*, 507 U.S. 619, 637-39.

14 Accordingly, petitioner's federal habeas petition should be denied with respect to his first

15 ground for relief.

16 <u>Ground Two: Ineffective Assistance of Counsel</u>

17     Petitioner asserts in his second ground for relief that his trial counsel rendered

18 ineffective assistance when he both elicited, and failed to object to, irrelevant and prejudicial

19 evidence that undermined the defense theory of the case. A criminal defendant has a right,

20 guaranteed by the Sixth Amendment, to the effective assistance of counsel. *Strickland v.*

21 *Washington*, 466 U.S. 668, 687 (1984). Claims of ineffective assistance of counsel are

22 evaluated under the two-prong test set forth in *Strickland*. Under *Strickland*, a defendant must

REPORT AND RECOMMENDATION
PAGE -9

01 prove (1) that counsel's performance was deficient and, (2) that the deficient performance

02 prejudiced the defense. *Strickland*, 466 U.S. at 687.

03    With respect to the first prong of the *Strickland* test, a petitioner must show that

04 counsel's performance fell below an objective standard of reasonableness. *Strickland*, 466

05 U.S. at 688. Judicial scrutiny of counsel's performance must be highly deferential, and there is

06 a strong presumption that counsel's performance fell within the wide range of reasonably

07 effective assistance. *Id*. at 689. "A fair assessment of attorney performance requires that

08 every effort be made to eliminate the distorting effects of hindsight, to reconstruct the

09 circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's

10 perspective at the time." *Id*.

11    The second prong of the *Strickland* test requires a showing of actual prejudice related to

12 counsel's performance. In order to establish prejudice, a petitioner "must show that there is a

13 reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

14 would have been different. A reasonable probability is a probability sufficient to undermine

15 confidence in the outcome." *Id*. at 694.

16    The reviewing Court need not address both components of the inquiry if an insufficient

17 showing is made on one component. *Strickland*., 466 U.S. at 697. Furthermore, if both

18 components are to be considered, there is no prescribed order in which to address them. *Id*.

19    On direct appeal, petitioner argued that his trial counsel was ineffective for eliciting,

20 and for failing to object to, irrelevant and prejudicial testimony by Easker Buckley regarding

21 what type of person he thought petitioner was. Petitioner also faulted counsel for failing to

22 object to Easker and Jeanette Buckley's hearsay testimony regarding what their children told

01 them about their encounter with petitioner, testimony that petitioner claimed undermined his

02 theory of the case.

03      The Washington Court of Appeals applied the *Strickland* test to petitioner's ineffective

04 assistance of counsel and concluded that petitioner had not demonstrated that counsel's

05 performance was deficient.   The Court of Appeals explained its decision as follows:

> There was never any evidence that Easker and Alston were closer than seven feet apart when the incident occurred.   Other evidence suggested the distance was greater.   There was never any evidence that Easker was armed or that Alston thought he might be.   There was conflicting testimony about whether Easker came toward Alston after he drew his gun.   There was only Alston's testimony that he felt he could not retreat into Keating's apartment if he felt threatened.   All the evidence was that Easker fled after the first shot but that Alston fired additional shots while advancing toward Easker's retreat path and that he reloaded his weapon before getting into his car and leaving.   These circumstances presented a difficult case for the defense theory of self-defense. Alston had to show that he believed he was in danger, that this belief was reasonable, and that his resort to a firearm was a reasonable response. Evidence showing that Easker bore Alston animosity supported that theory and it favored Alston's case to show that Easker was irate, irrational or aggressive, and that he might have borne a grudge or believed that he needed to confront Alston.   It also favored Alston's theory to show that Easker had grounds for believing that Alston had cursed at his children.   While there were drawbacks to this testimony, there were reasonable tactical or strategic grounds to allowing the jury to hear it.   Under the circumstances, Alston has not shown that counsel's performance was ineffective.

17 (Dkt. No. 14, Ex. 6 at 8-9.)

18      The Court of Appeals applied the proper standard to petitioner's ineffective assistance

19 of counsel claims and reasonably concluded that petitioner had not established any grounds for

20 relief based upon his counsel's performance.   Accordingly, petitioner's second ground for

21 federal habeas relief should be denied.

22 ///

REPORT AND RECOMMENDATION
PAGE -11

<u>Certificate of Appealability</u>

02          A petitioner seeking post-conviction relief under § 2254 may appeal a district court's

03   dismissal of his federal habeas petition only after obtaining a certificate of appealability (COA)

04   from a district or circuit judge.   A certificate of appealability may issue only where a petitioner

05   has made "a substantial showing of the denial of a constitutional right."   *See* 28 U.S.C. §

06   2253(c)(3).   A petitioner satisfies this standard "by demonstrating that jurists of reason could

07   disagree with the district court's resolution of his constitutional claims or that jurists could

08   conclude the issues presented are adequate to deserve encouragement to proceed further."

09   *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).   Under this standard, this Court concludes that

10   petitioner is not entitled to a certificate of appealability with respect to either of his two grounds

11   for federal habeas relief.

12                                         <u>CONCLUSION</u>

13          For the reasons set forth above, this Court recommends that petitioner's petition for writ

14   of habeas corpus be denied and that this action be dismissed with prejudice.   This Court further

15   recommends that a certificate of appealability be denied.   A proposed order accompanies this

16   Report and Recommendation.

17          DATED this <u>19th</u> day of July, 2011.

18

19                                                        _____

20                                                        Mary Alice Theiler
                                                         United States Magistrate Judge

21

22


REPORT AND RECOMMENDATION
PAGE -12